IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TUNDRA RENEE JOHNSON                                                    PLAINTIFF

V.                                                  CAUSE NO.: 1:09CV83-SA-JAD

CHICKASAW COUNTY, MISSISSIPPI, d/b/a
SHEARER-RICHARDSON MEMORIAL NURSING HOME            DEFENDANT

MEMORANDUM OPINION

Defendant has filed a Motion for Summary Judgment [50] seeking dismissal of Plaintiff's causes of action. After reviewing the motions, responses, rules and authorities, the Court finds as follows:

*Factual and Procedural Background*

Tundra Renee Johnson was hired as a full-time Certified Nursing Assistant (CNA) by Shearer-Richardson Memorial Nursing Home (SRMNH) on March 3, 2005. Her supervisor at that time, Judy Dunn, allowed Johnson to begin her shift at 7:30 each morning in order to get her children on the school bus. Johnson's schedule under Dunn was 7:30 a.m. to 4:00 p.m. Dunn noted that she adjusted Johnson's hours to "help her out a little bit." However, Dunn remarked that Johnson was consistently late to work on the weekends and noted so in her personnel file.

Thereafter, Roselyn Powell was hired to be the Assistant Director of Nursing. In this position, Powell became Johnson's direct supervisor, meaning she prepared Johnson's schedules. Powell did not agree with Johnson's work schedule and told her that she had to be at work at 6:45 a.m. in order to remain a full-time employee. Johnson contends that around this time, Beth Brown, a Caucasian CNA, was hired. Plaintiff avers that Brown was able to make her own schedule and decide whether she wanted to work the 6:00 a.m. to 2:00 p.m. shift or come in at 7:00 a.m. and leave

at 3:00 p.m.

Johnson informed Judy Dunn that she felt like she was being racially discriminated against by Roselyn Powell. Dunn told Johnson to talk to Brenda Wise, SRMNH's Administrator. Johnson claims that when she went to talk to Wise, Powell was in her office as well, and Powell began screaming and telling her she "could not do this." Plaintiff contends she was not yelling back, and there was no cursing. According to Plaintiff, Powell called her "stupid" in that meeting. After the meeting in Wise's office, Plaintiff states that her and Powell moved to Powell's office where she thought they would discuss her schedule. However, Plaintiff contends Powell stated, "I swear, you people are your own worst enemies and you just don't know it." Johnson maintains that Powell began naming African American CNAs, and Plaintiff asked, "You mean black people?" Johnson contends Powell replied, "Well, Tundra, it is what it is."

Plaintiff claims she never got more hours. In fact, shortly thereafter, Plaintiff contends that she was demoted to part-time employment. Plaintiff contends she worked the days that Powell offered; however, she only worked a handful of days in April and two days in May. In September of 2008, Powell officially terminated Plaintiff with her last date of employment listed as May 4, 2008.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on the basis of race discrimination and retaliation. After receiving her right to sue letter, she brought this lawsuit. Defendant seeks summary judgment on Plaintiff's race discrimination and retaliation claims.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) when evidence reveals no genuine dispute

regarding any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." Little, 37 F.3d at 1075.

*Discussion and Analysis*

*(a) Race Discrimination*

Johnson brings her race discrimination claims under Title VII and Section 1981. In the Fifth Circuit, "[e]mployment discrimination claims brought under 42 U.S.C. § 1981 . . . are analyzed under the evidentiary framework applicable to claims arising under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. section 2000e, *et seq*." Lawrence v. Univ. of Texas Medical Branch at Galveston, 163 F.3d 309, 311 (5th Cir. 1999); LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 n.2 (5th Cir. 1996) ("Claims of racial discrimination brought under § 1981 are governed

3

by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII."). Thus, those causes of action are discussed in tandem here.

Since Johnson does not allege any direct evidence of discrimination, we apply the familiar McDonnell Douglas burden-shifting analysis. Moore v. Reeves County, 360 F. App'x 546, 548-49 (5th Cir. 2010) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). "To survive summary judgment under McDonnell Douglas, the plaintiff must first present evidence of a prima facie case of discrimination." Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 317 (5th Cir. 2004). If the plaintiff presents a prima facie case of discrimination, then an inference of discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action. Id.

Johnson is an African American woman fully qualified for her position as a CNA. Thus, Plaintiff has satisfied the first two prongs of her prima facie case. As to the third prong, after reviewing Plaintiff's pleadings, it appears to the Court that Plaintiff's adverse employment action is the change in scheduling Plaintiff suffered when Roselyn Powell became her supervisor. According to 42 U.S.C. § 2000e-2(a)(1), an employment action is any "compensation, term[], condition[], or privilege[] of employment" that is adversely affected "because of such individual's race . . .". Here, Plaintiff's prior supervisor, Judy Dunn, allowed Plaintiff to come into work at 7:30 a.m. and leave at 4:00 p.m., which admittedly "help[ed] [Johnson] out a little bit." Roselyn Powell thereafter altered her schedule, thereby revoking the privilege Dunn extended to Johnson that was needed in order to get her children on the school bus each weekday morning. Accordingly, Plaintiff has pled a sufficient adverse employment action as to the modification of her work schedule. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69, 126 S. Ct. 2405, 165 L. Ed. 2d 345

(2006) (noting that a "schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children."). To the extent that Plaintiff may be alleging demotion or termination as her adverse employment action, there is no dispute that those occurrences also constitute adverse employment actions.

The Fifth Circuit has held that "in disparate treatment cases involving separate incidents of misconduct . . . for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'" Perez v. Tex. Dep't of Criminal Justice, 395 F.3d 206, 213 (5th Cir. 2004) (holding that a district court erred when it suggested that "comparably serious" misconduct was by itself enough to make employees similarly situated rather than instructing the jury that the employees' circumstances must have been "nearly identical"); see also Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 304-05 (5th Cir. 2000) (holding that an employee had not proved disparate treatment where the circumstances surrounding the disciplinary actions were different).

As to the fourth prong of Plaintiff's prima facie case, Johnson asserts:

Plaintiff had no flexibility in her schedule whereas [Beth] Brown was able to come in at different times based on what was convenient for her. Plaintiff was reprimanded and moved to part-time status for tardiness, when the white CNA was able to dictate her hours.

Accordingly, Plaintiff has shown that she may have been treated differently than other similarly situated persons outside of the protected class with regards to the CNA schedule and has satisfied her prima facie case as to scheduling. However, Plaintiff has failed to put forth evidence that any other Caucasian CNA reported to work late or missed work on numerous occasions and was not demoted or terminated. Thus, Plaintiff's prima facie case as to demotion or termination fails.

5

Defendant has not put forth any reason for the modification of Plaintiff's schedule, other than Roselyn Powell's succession as Johnson's supervisor. Even if the Court did assume Defendant had a legitimate, nondiscriminatory reason for the modification to Plaintiff's schedule, Powell's statements to Plaintiff and conduct toward Beth Brown would raise an inference that Plaintiff's race was a motivating factor in the decision to cease making concessions to Plaintiff regarding her schedule.

Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's race discrimination in scheduling claim is denied.

*(b) Retaliation*

Plaintiff alleges she was retaliated against for reporting and opposing Defendant's discriminatory conduct. A plaintiff establishes a prima facie case for unlawful retaliation under 42 U.S.C. § 2000e-3(a) by proving: (1) that he or she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal connection exists between the protected activity and the adverse employment action. Lemaire v. State of Louisiana, 480 F.3d 383, 388 (5th Cir. 2007). An employee has engaged in protected activity if he or she has (1) opposed any practice made an unlawful employment practice by the statute, or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing. Grimes v. Texas Dept. of Mental Health, 102 F.3d 137, 140 (5th Cir.1996).

An employee's informal complaint to an employer may constitute participation in a protected activity, provided that the complaint is in opposition to conduct that is unlawful, and the employee holds a good faith, reasonable belief of the conduct's unlawfulness. Cavazos v. Springer, 2008 U.S. Dist. LEXIS 58317, at *22, 2008 WL 2967066, at *7 (S.D. Tex. Aug. 1, 2008) (citing Burlington

6

N., 548 U.S. at 58, 126 S. Ct. 2405 (2006)). "Complaints to employers that do not complain of conduct protected by Title VII do not constitute protected activities under the statute." Id.

Plaintiff contends that she reported to Brenda Wise that she was being discriminated against based on her race. Specifically, Johnson contends she complained to Wise that Roselyn Powell treated Caucasian employees more favorably than African American employees, in scheduling. However, Brenda Wise testified that Johnson never complained of discrimination against Roselyn Powell. Viewing the evidence in the light most favorable to Plaintiff, if Johnson did claim she was being discriminated against and reasonably believed that conduct was unlawful, that conduct would constitute a protected activity under Title VII.

The causal link required by the third prong of the prima facie case does not have to meet a "but for" standard. A plaintiff does not have to prove that his protected activity was the sole factor motivating the employer's challenged actions in order to establish the causal link element of a prima facie case. Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002). Close timing between an employee's protected activity and an adverse action against the employee may provide the causal connection needed to make out a prima facie case of retaliation. McCoy v. City of Shreveport, 492 F.3d 551, 562, n. 28 (5th Cir. 2007); Swanson v. Gen. Srvs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997). The test at the prima facie stage may not be particularly stringent, but the plaintiff nonetheless "must produce some evidence of a causal link." Ackel, 339 F.3d 376, 385 (5th Cir. 2003). A plaintiff who relies on nothing more than her subjective belief that she was the victim of retaliation cannot establish a prima facie causal link. Peace v. Harvey, 207 F. App'x 366, 369 (5th Cir. 2006) (per curiam) (citing Byers v. The Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000)). And if the only evidence of a prima facie casual link is "mere temporal proximity between an employer's

knowledge of protected activity and an adverse employment action," then "the temporal proximity must be very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam) (citations and internal quotation marks omitted) (citing with approval cases holding that three and four-month gaps between an employer's knowledge of a protected activity and an adverse employment action are too long, standing alone, to establish a prima facie causal link). In addition, a plaintiff who relies on close "temporal proximity between the protected activity and the adverse employment action" must produce "evidence of knowledge of the protected activity on the part of the decision maker." Ramirez v. Gonzales, 225 F. App'x 203, 210 (5th Cir. 2007) (per curiam) (citing Swanson, 110 F.3d at 1188).

Plaintiff's only causal connection between her complaint of discrimination and her demotion is the timing. Plaintiff contends her meeting with Brenda Wise and Roselyn Powell occurred in "early 2008" and she was demoted on January 14, 2008. Thus, Plaintiff has presented sufficient causal connection between the protected activity and her demotion. The Court cannot, however, state that Plaintiff has proven a prima facie causal connection between her complaint to Wise and her eventual termination due to the span of nine months between those two events.

If the plaintiff establishes a prima facie case of retaliation, the defendant must come forward with a legitimate, non-retaliatory reason for its adverse employment action. Once the defendant advances its reason, the focus becomes the ultimate issue in a retaliation case, which is whether the employer retaliated against the employee because he or she engaged in protected activity. Although not in itself conclusive, the timing of an employer's actions can be a significant factor in the court's analysis of a retaliation claim. Gee, 289 F.3d at 347 n.3 (citing Shirley v. Chrysler First, Inc., 970 F.2d 39, 44 (5th Cir. 1992)).

8

For Title VII retaliation claims, the recent Fifth Circuit decision in Smith v. Xerox Corp., 602 F.3d 320 (5th Cir. 2010), modified the law applicable to a plaintiff's burden of proving retaliation. In Smith the defendant challenged the district court instructing the jury on a mixed-motive theory of causation, which allowed the jury to find for the plaintiff on her retaliation claim with only a "motivating factor" rather than "but-for" causation. Id. at 325. The Court looked to its Title VII retaliation precedents based on Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989), and Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003), and concluded that a mixed-motive theory may be used in Title VII retaliation cases without requiring the plaintiff to have direct evidence of retaliation in order to proceed under that theory.

Prior to Smith, the Fifth Circuit had stated that for a plaintiff to prevail on a Title VII retaliation claim, the plaintiff had to prove that the adverse employment action would not have occurred but for the protected activity. Strong v. Univ. Health Care Sys., L.L.C., 482 F.3d 802, 806 (5th Cir. 2007) (citing Septimus v. Univ. of Houston, 399 F.3d 601, 608-09 (5th Cir. 2005)); Vaide v. Mississippi State Univ., 218 F.3d 365, 374 (5th Cir. 2000). It is now apparent from the Fifth Circuit's analysis in Smith that a plaintiff may also satisfy the burden of proving retaliation by demonstrating that unlawful retaliation was a motivating factor in the employer's adverse employment decision.

Therefore, to withstand summary judgment, Title VII requires that the plaintiff, using direct or circumstantial evidence, present sufficient evidence for a reasonable jury to conclude that retaliation was a motivating factor for the defendant's employment action. See Roberson v. Alltel Info. Srvs., 373 F.3d 647, 652 (5th Cir. 2004) (citing Desert Palace, 539 U.S. at 101, 123 S.Ct.

9

2148).

Defendant contends Johnson was demoted due to her excessive absenteeism, tardiness, and refusal to work her assigned shifts. The Attendance Standards and Policy attached to Defendant's Motion for Summary Judgment establish that ten occurrences of absences in a twelve month period would result in disciplinary action ranging from suspension, the initiation of a probationary period, permanent placement on a part-time schedule, or termination. Moreover, the Policy states that three tardies in a thirty day period would be considered one absence. Defendant attached Johnson's personnel record to the motion which evidences that from November 6, 2007, until January 1, 2008, Plaintiff was late forty-two out of forty-three days. Her record includes several counseling notations in which Johnson had been warned that her failure to get to work on time may result in being moved to part-time. Thus, Defendant has presented a legitimate non-retaliatory reason for Plaintiff's discharge.

As evidence of her retaliatory discharge, Plaintiff highlights the relatively brief period between her complaint and her demotion. Plaintiff was officially demoted on January 14, 2008. Both parties have vaguely stated that the meeting in Brenda Wise's office occurred approximately two weeks prior to that. In her EEOC charge, the Plaintiff alleges she complained to the administrator on January 15, 2008. Other than this inconsistency, both parties seem to agree that the meeting was prior to her demotion. The temporal proximity between the conference and demotion, as well as the "you people" comment by Roselyn Powell, could lead a reasonable juror to conclude Plaintiff was retaliated against for complaining about any alleged discrimination. Accordingly, Plaintiff has presented a genuine issue of material fact as to whether she was demoted in retaliation for complaining about alleged discrimination at SRMNH.

*Conclusion*

Plaintiff has failed to meet her prima facie burden to establish race discrimination in her demotion and termination.  However, Defendant's Motion for Summary Judgment as to Plaintiff's race discrimination claim in scheduling is denied as Plaintiff has satisfied her prima facie burden, Defendant failed to offer a legitimate, non-discriminatory reason for the action, and Plaintiff put forth evidence that her race was a motivating factor in Defendant's decision to alter her work schedule.  Plaintiff has raised genuine issues of material fact regarding her demotion and possible retaliation for complaining of the supposed discrimination.  Accordingly, Defendant's Motion for Summary Judgment is denied as to Plaintiff's Title VII retaliation claim .

SO ORDERED, this the 16th day of September, 2010.

 **/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**